1   RUKIN HYLAND & DORIA LLP
    Peter Rukin State Bar No. 178336
2   John Hyland State Bar No. 178875
    100 Pine Street, Suite 725
3   San Francisco, CA  94111
    Telephone: (415) 421-1800
4   Facsimile: (415) 421-1700
    Email: johnhyland@rhddlaw.com
5
    NICHOLS KASTER & ANDERSON, PLLP
6   Donald H. Nichols, MN State Bar No. 78918
    (admitted *pro hac vice*)
7   Paul J. Lukas, MN State Bar No. 22084X
    (admitted *pro hac vice*)
8   Rachhana T. Srey, MN State Bar No. 3401433
    (admitted *pro hac vice*)
9   4600 IDS Center
    80 South Eighth Street
10  Minneapolis, MN 55402
    Telephone: (612) 256-3200
11  Facsimile: (612) 215-6870
    lukas@nka.com
12
13  Attorneys for Individual and Representative Plaintiffs

14              IN THE UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16  Jeremy Stanfield, Romonia Persand, and       Case File No.: C06-3892 SBA/JL
    Shabnam Sheila Dehdashtian, Saira
17  Losoya, and Eva Williams, individually, on
    behalf of all others similarly situated, and
18  on behalf of the general public,             PLAINTIFFS' MEMORANDUM OF
                                                 POINTS AND AUTHORITIES IN
19                         Plaintiffs,           OPPOSITION TO DEFENDANT'S
                                                 MOTION FOR PROTECTIVE ORDER
20       vs.

21  First NLC Financial Services, LLC,           Date: October 18, 2006
    and DOES 1 through 50 inclusive,             Time: 9:30 a.m.
22                                               Judge: Hon. James Larson
                           Defendants.           Date Action Filed: June 22, 2006
23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 2

III.   ARGUMENT. ...................................................................................................... 3

    A.  Plaintiffs' Counsel's Advertisement Letter to Potential Class Members Is Constitutionally Protected Free Speech. ................................................. 4

        1.  As Recognized by the United States Supreme Court, Plaintiffs' Counsel's Advertisement Letters are Not "Notice." ........................................ 5

        2.  The Advertisement Letter Truthfully Informs Prospective Class Members of the Lawsuit. ....................................................................... 6

    B.  Neither Plaintiffs Nor Their Counsel Have Abused the Class and Collective Action Process ....................................................................... 9

        1.  Plaintiffs and Their Counsel Have Not Taken or Used Confidential Information to Obtain Consent Forms ........................................... 9

        2.  Plaintiffs' Counsel's Website Does Not Invite People to Violate Any Confidentiality Agreements They May Have With Defendant ................... 11

    C.  Plaintiffs' Counsel Have Not Subjected Themselves to Florida Rules of ............... Professional Conduct ............................................................................. 12

        1.  The Advertisement Letter Complied with the Colorado Rules of Professional Conduct ....................................................................... 12

        2.  Plaintiffs' Counsel Did Not Engage in the Unauthorized Practice of Law.. 13

IV.    CONCLUSION .................................................................................................. 14

i

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

<u>Bates v. State Bar of Ariz.</u>, 433 U.S. 350 (1977) ............................................................ 4

<u>Florida Bar v. Kaiser</u>, 397 So.2d 1132, 1133 (Fla. 1981) ............................................. 13

<u>Grayson v. K-Mart Corp.</u>, 79 F.3d 1086 (11th Cir. 1996) ............................................. 9

<u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 101 (1981). ............................................ 2, 3, 5, 6

<u>Hoffman La-Roche Inc. v. Sperling</u>, 493 U.S. 165 (1989) ..................................... *passim*

<u>In re Patricia Cavucci, et al.</u>, No. 99-11704-J (11th Cir. July 28, 1999) ....................... 5

<u>In re R.M.J.</u>, 455 U.S. 91 (1982) .................................................................................... 4

<u>Kalish, et al. v. High Tech Inst.</u>, Civ. No. 04-1440 (D. Minn. Apr. 22, 2005) ......................... 5, 6

<u>Parris v. The Superior Court of Los Angeles and Lowe's H.I.W., Inc.</u>, 190 Cal.App. 4th 285, 290 (Cal. App. Ct. 2003) ........................................................................................................ 5

<u>Shapero v. Kentucky Bar Ass'n</u>, 486 U.S. 466 (1988) ................................................... 2, 3, 4, 5

<u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 407-408 (D.N.J. 1988) ............................. 6

<u>State v. Foster</u>, 674 So.2d 747 (Fla. App. Ct. 1996) ..................................................... 13

<u>Vogt v. Texas Instruments, Inc.</u>, 05-cv-02244 (N. D. Tex. Aug. 8, 2006) ..................................... 6

<u>Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio</u>, 471 U.S. 626 (1985) ...... 5

## <u>STATUTES</u>

29 U.S.C. § 216(b)   ........................................................................................................ 2

Fla. Stat. Ann §  454.23 (2006)  ................................................................................... 13

## <u>RULES</u>

Colo. Rules of Professional Conduct 7.3  ..................................................................... 13

## <u>OTHER</u>

Amendments to Rules Regulating the Florida Bar-Advertising Rules, 762 So.2d 392, 393 (Fla. 1999)            ................................................................................................ 12

ii

I.       **INTRODUCTION**

Critical to this motion, and Plaintiffs' motion for judicial notice, is the fact that the statute of limitations continues to run on potential plaintiffs in a collective action under the Fair Labor Standards Act until each plaintiff files an individual consent to join form with the Court.  This fact drives the conduct of both parties.  If the Plaintiffs are to enjoy the benefits of collective actions as described by the Supreme Court,[1] they must provide notice quickly with the statute of limitations running on the putative classes' claims.  Defendant, on the other hand, is in no hurry to resolve the notice issue, much preferring that the statute of limitations continue to run on potential plaintiffs who do not know of Defendant's unlawful practices.  This motion for a protective order is Defendant's attempt to achieve its goal of delay.

Defendant's motion is a transparent attempt to use the rules of ethics to achieve this strategic goal and punish those the rules were designed to protect.  It asks the Court to strike the consent forms of the employees who have filed consent forms—thereby tolling the statute of limitations on their claims—resulting in a loss of some or all of their claim when they re-file.  This request reveal Defendant's true motive—to keep the statute of limitations running with procedural hurdles designed to delay a ruling addressing its intentional and blatant violation of the FLSA.

In support of this motion, Defendant makes unsubstantiated allegations regarding the conduct of Plaintiffs and their counsel, presumes without support that the persons who have joined this action were contacted through unethical or disreputable means, and attacks the content of a letter that has already by examined and approved by one Federal District Court as a proper "advertisement."   What Defendant seeks is not only without factual support, it has been specifically rejected by the United States Supreme Court in <u>Hoffman-La Roche, Inc. v. Sperling</u>,

---

[1] <u>See</u> <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989) ("A collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.").

493 U.S. 165 (1989), <u>Shapero v. Kentucky Bar Ass'n</u>, 486 U.S. 466, 472 (1988), and <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 101 (1981).  Plaintiffs request that the Court reject Defendant's attempt to further delay notice to the putative class and deny its motion in its entirety.

## II.      STATEMENT OF THE FACTS

Defendant First NLC Financial Services, LLC is a national nonprime residential mortgage lender, employing loan officers, loan processors, and account managers at  approximately forty-three (43) branch offices in forty-one (41) states across the country.[2]

On May 1, 2006, Saira Losoya and Eva Williams filed a lawsuit on behalf of themselves and all other "similarly situated" employees in the United States District Court, District of Colorado.  Their Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") nationwide by failing to pay all loan officers, loan processors, and account managers overtime compensation as required for "non-exempt" employees.  On June 22, 2006, Jeremy Stanfield, Romonia Persand, and Shabnam Sheila Dehdashtian filed a Complaint making the same allegations under the FLSA and California law, and seeking class action status under Rule 23 and collective action status under the FLSA, 29 U.S.C. § 216(b).  As a result of the parties' stipulation, these two cases were consolidated by Court Order dated August 15, 2006.[3]

Currently, approximately 164 current and former employees of Defendant have joined this case as "opt-in" Plaintiffs.  These individuals worked as loan officers, loan processors, or account managers in Defendant's various branch offices located throughout the United States, including California, Colorado, Florida, Georgia, Minnesota, Nevada, Pennsylvania, Texas, Virginia, and Washington.  Some of these persons joined in response to an "advertisement letter" sent by Plaintiffs' counsel,[4] other contacted Plaintiffs' counsel directly by phone or through the internet.[5]

---

[2] Leighton Decl. ¶ 2.
[3] Dkt. No. 29.
[4]  Def. Ex. B.

2

1   None of these persons were contacted directly by phone, or discovered through the use of

2   Defendant's purportedly "confidential" information, because Plaintiffs are not in possession of

3   any such information.[6]

4       On August 16, 2006, Defendant filed the instant motion, arguing the Plaintiffs'

5   advertisement letter is incomplete and that they should provide detailed written notice to the

6   potential plaintiffs.  The day after Defendant filed the motion, Plaintiffs' counsel inquired—for

7   the second time—whether Defendant would stipulate to conditional class certification, work

8   jointly with Plaintiffs' counsel to draft a notice, and submit the proposed notice to the Court for

9

10  approval.[7]  Defendant did not respond to Plaintiffs' counsel's proposal.[8]  On September 5, 2006,

11  Defendant filed its opposition to Plaintiffs' motion for conditional class certification and notice.[9]

12  **III.    <u>ARGUMENT</u>**

13

14      Defendant's motion has no basis in law or fact.  Rather, it: 1) seeks the type of blanket

15  prohibition on communication between Plaintiffs' counsel and potential collective action

16  members prohibited by the United States Supreme Court in <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89,

17  101 (1981) and <u>Shapero v. Kentucky Bar Ass'n</u>, 486 U.S. 466, 472 (1988); 2) intentionally

18  ignores the difference between constitutionally protected "advertisement letters" and "judicial

19  notice" recognized by the Supreme Court in <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165

20

21  _____

22  [5] Lukas Aff. ¶ 4.
    [6] Lukas Aff. ¶¶ 4-5.
    [7] Attached as Exhibit A to the Affidavit of Paul J. Lukas is Plaintiffs' counsel's email to Defendant's counsel

23  inquiring about a stipulation and notice to putative class members.  On or about June 29, 2006, during the parties'
    initial Rule 26(f) conference in the <u>Losoya</u> lawsuit, Plaintiffs' counsel inquired whether Defendant would stipulate to

24  class notice or whether Defendant would contest a motion for conditional class certification.  Defendant stated that it
    would not provide a list of the putative class members and would contest a motion for conditional class certification.

25  (Lukas Aff. ¶ 6.)
    [8] Instead, on August 23, 2006, Defendant's counsel inquired whether Plaintiffs would agree to having Defendant's

26  motion for protective order heard at the same time as Plaintiffs' motion for conditional class certification.  Plaintiffs'
    counsel responded that they would not agree, informing Defendant that its ethics accusations were meritless and

27  being used for strategic purposes, and invited Defendant to report Plaintiffs' conduct to the appropriate ethics board if
    Defendant's concerns were genuine.  A true and correct copy of the email exchange is attached as Exhibit B to Lukas

28  Aff.
    [9] Docket # 65.

(1989), demanding the detailed written notice to potential class members found in a <u>Hoffman-La Roche</u> judicial notice, while at the same time arguing that such notice is not appropriate; 3) attempts to use the rules of ethics as a strategic litigation weapon and punish the exact persons the rules were designed to protect; and 4) bases its argument upon a tortured reading of Plaintiffs' written communications, and other unsupported and reckless allegations.

Plaintiffs have already filed their motion for court-facilitated notice.[10]  In the meantime, the Court should immediately reject Defendant's motion to restrict non-deceptive communications with potential class members, and invalidate the consents already filed.

> **A.**     **Plaintiffs' Counsel's Advertisement Letter to Potential Class Members Is Constitutionally Protected Free Speech.**

Defendant has erroneously characterized Plaintiffs' advertisement letters as "notice," arguing that these letters are misleading because they fail to include the language that is typically included in a court-authorized notice.  An advertisement letter is not notice.  Indeed, the language Defendant claims is "missing" from Plaintiffs' advertisement letters is precisely the language included in Plaintiffs' proposed notice attached as Exhibit A to their motion for judicial notice that Defendant opposes.

Lawyer advertising is constitutionally protected speech.  <u>Shapero</u>, 486 U.S. at 472 (citing <u>Bates v. State Bar of Ariz.</u>, 433 U.S. 350 (1977)).  Truthful advertising related to lawful activities is entitled to the protection of the First Amendment, while only "inherently misleading" speech may be prohibited.  <u>In re R.M.J.</u>, 455 U.S. 91 (1982).  In <u>Shapero</u>, the Supreme Court confronted the issue of whether a State may, consistent with the First and Fourteenth Amendments, categorically prohibit lawyers from advertising legal services by sending "truthful and non-deceptive" letters to potential clients known to face legal problems.  486 U.S. at 466.  The Court concluded that attorneys could advertise to potential clients known to face legal problems because

---

[10] Docket # 48.

such advertising is constitutionally protected commercial speech, "which may be restricted only in the service of a substantial government interest, and only through means that directly advance that interest." Id. at 472 (quoting Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626 (1985)). "In assessing the potential for overarching and undue influence, the mode of communications makes all the difference." Shapero, 486 U.S. at 475. "Targeted, direct-mail solicitation generally . . . poses much less risk of overarching or undue influence than does in-person solicitation." Id.

> **1.   As Recognized by the United States Supreme Court, Plaintiffs' Counsel's Advertisement Letters Are Not "Notice."**

Defendant cites Hoffman-La Roche, but fails to recognize the Supreme Court's acknowledgement of the difference between "advertisement letters" and judicial notice. 493 U.S. at 171. In Hoffman-La Roche, the plaintiffs sent 600 advertisement letters that were, unlike those here, inflammatory and far less objective before they moved for judicial notice. Id. at 168. Relying on Shapero, the Supreme Court acknowledged the constitutionally protected nature of the letters, and confirmed that any alleged "conflicts" between the letters and notice can be addressed by the Court at the judicial notice stage. Hoffman-La Roche, 493 U.S. at 171, n. 2. In other words, the Supreme Court has specifically provided the remedy for conflicts between the parties regarding communications with potential plaintiffs in FLSA collective actions. That remedy is judicial notice. That is precisely the reason Plaintiffs are concurrently before this Court with their own motion for conditional class certification and judicial notice.

The fact that this Court has the discretion to supervise "notice," however, does not preclude Plaintiffs' counsel from otherwise-protected communication with prospective collective action members. Id. at 168; see In re Patricia Cavucci, et al., No. 99-11704-J (11th Cir. July 28, 1999) ("the court's refusal to exercise its discretion in this instance does not prevent [Plaintiffs]

from contacting potential plaintiffs without the court's approval");[11] Kalish, et al. v. High Tech Inst., 2005 WL 1073645, at *4 (D. Minn. Apr. 22, 2005) (finding the advertisement letters the plaintiffs' counsel sent to putative class members were not "notice");[12]  Parris v. The Superior Court of Los Angeles and Lowe's H.I.W., Inc., 190 Cal.App. 4th 285, 290 (Cal. App. Ct. 2003) ("[p]re certification communication with potential class members, like pre-filing communication, is constitutionally protected free speech" and a "blanket requirement of judicial approval for such communications would constitute an impermissible restraint on speech.").

Moreover, other than unsupported allegations, and feigned confusion concerning the difference between notice and commercial speech, Defendant has failed to identify any evidence that would warrant a need for limiting Plaintiffs' counsel's communication.  Despite this dearth of support, Defendant seeks the most grave remedy—a total ban on communication and an order voiding consents—rather than a "carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Gulf Oil, 452 U.S. at 101.[13] No restraint on Plaintiffs' counsel speech is warranted because Plaintiffs' counsel's advertisement letters are not false or misleading.

### 2. The Advertisement Letter Truthfully Informs Prospective Class Members of this Lawsuit.

Under Shapero, Plaintiffs' advertisement letter may not be prohibited unless it is false or misleading.  486 U.S. at 479.  At the trial court level in Hoffman-La Roche, the district court discussed in detail the letters plaintiffs sent to other putative class members.  From these letters,

---

[11] A true and correct of this Eleventh Circuit decision is attached as Exhibit C to Lukas Aff.

[12] A copy of the Kalish is attached as Exhibit D to Lukas Aff.

[13] Citing Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 (1981), Hoffman-La Roche confirmed that a trial court has substantial interest in communication that are mailed for single actions involving multiple parties, including cases brought under Section 216(b) of the Fair Labor Standards Act.  493 U.S. 165, 171 (1989).  Gulf Oil set the standard for imposing restrictions on a lawyer's right to free speech, stating that "order limiting communications between parties and potential class members should be based on clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101.  Further, "such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id.

the plaintiffs obtained approximately 400 consents to join. <u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 407-408 (D.N.J. 1988). Defendant argued that these consents should be invalidated. For the most part, the court dismissed the defendant's arguments as "silly," verging on "ludicrous," and "too insubstantial to discuss." <u>Id.</u> at 407-409. The court refused to invalidate the consent forms gathered by the plaintiffs through these letters because these letters were not flawed in any way to vitiate the consents. <u>Id.</u> at 410. The distinctions between the <u>Hoffman-La Roche</u> letters and the letters in this case are remarkable. In addition to inviting potential class members to join, the <u>Hoffman-La Roche</u> letters contained phrases such as "Black Monday Massacre," "war chest," and "Operation Throw Em Out." <u>Id.</u> at 410.

Here, Plaintiffs' counsel carefully drafted an informative letter that contains no puffery or unrealistic expectations. The letters are conspicuously labeled as "ADVERTISEMENT," do not have the appearance of court-authorized notice or pleading, are mailed directly to only prospective class members, and have been mailed pre-certification. In fact, this exact letter, sent by Nichols Kaster & Anderson in another case, has been examined and approved by the Minnesota Federal District Court. <u>Kalish</u>, 2005 WL 1073645, at *4.[14] In <u>Kalish</u>, the defendants made the same arguments Defendant makes here. The court refused to rescind the previously filed consents forms because the letter clearly stated that it is an advertisement, is not misleading, and does not contain anywhere near the detail usually included in a judicial notice. <u>Id.</u>; <u>see also</u> <u>Vogt v. Texas Instruments, Inc.</u>, 05-cv-02244 (N. D. Tex. Aug. 8, 2006) (finding plaintiffs' counsel's advertisement letters were not misleading and not a communication of the kind of degree to motivate court intervention where the court has not conditionally certified a collective action or determined the contents of a possible court-authorized Section 216(b) notice).[15]

---

[14] A true and correct copy of the advertisement letter subject to the defendant's motion to rescind consents in <u>Kalish</u> is attached as Exhibit E to Lukas Aff.
[15] A true and correct copy of <u>Vogt</u> is attached as Exhibit F to Lukas Aff.

7

The Court should reach the same conclusion here.  Each statement in the letter is true and unassailable.  It is true that the "letter is to inform [the recipient] that [Nichols Kaster & Anderson] is pursuing a lawsuit on behalf of current and former loan officers and loan processors against First NLC."[16]  Contrary to Defendant's assertions, this sentence clearly indicates that the lawsuit is being pursued, not that a judgment has already been entered.[17]  It is also true that "[t]hese loan officers and loan processors seek overtime compensation withheld from them during their employment."[18]  While Defendant would undoubtedly prefer the letter to layout its defense in full, that does not change the fact that the sentence accurately portrays what the Plaintiffs seek.  It is true that "[a]s a current or former loan officer or loan processor, you may be eligible to join this lawsuit and recover your pay."[19]  Note the usage of the verbage "may be eligible," as opposed to "are eligible," as an indication that the letter does not imply a foregone conclusion.  It is true that "[e]nclosed are consent forms for loan officers and loan processors."[20]  It is true that "[i]f you were not compensated for overtime hours worked at anytime during the past three years and wish to join the lawsuit, please fill out the form and return it to us."[21]  Finally, it is true that if any recipient has any questions, they "may contact Ryan Tilot toll free at (877) 448-0492 or visit us on the web at www.overtimecases.com."[22]  Because there is no fact or omission in this letter that is misleading and the letter is conspicuously labeled as an advertisement, it is protected speech under the First and Fourteenth Amendments of the Constitution.

The parties' respective motivations are clear.  With the statute of limitations running, and Defendant contesting judicial notice, Plaintiffs' counsel has an obligation to inform potential class members that they may have a claim against Defendant at the early stages of the litigation so that

---

[16] Def.'s Ex. B.
[17] Def.'s Mem. at 10.
[18] Def.'s Ex. B.
[19] Id.
[20] Id.
[21] Id.
[22] Id.

8

their claims do not fall victim to the statute of limitations and the current Plaintiffs can reap the benefits of a collective action.   The "advertisement letter" is the constitutionally protected, court-approved, method for doing so.

Defendant's "concern" regarding the privacy interests of the potential class members, on the other hand, is highly suspect.  Defendant's true goal is to obtain dismissal of opt-in Plaintiffs' claims who have already affirmatively stated their desire to join this lawsuit, requiring them to re-file and suffer the adverse consequences of the statute of limitations that continues to run without a filed consent.  See Grayson v. K-Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996) (holding that the statute of limitations ceases to run only when each employee files a consent form).   As truthful and non-deceptive speech, this court should uphold Plaintiffs' counsel's First Amendment rights.

**B.      Neither Plaintiffs Nor Their Counsel Have Abused the Class and Collective Action Process.**

Likely surprised by the number of people interested in pursuing claims against it, Defendant incorrectly assumes and alleges that plaintiffs and/or their counsel have abused the class and collective action process by: 1) improperly taking and/or using confidential and private information without permission; and 2) improperly soliciting First NLC's employees to take First NLC's documents and information without permission; and 3) violating ethical duties under Florida law.  Because Defendant's allegations are unsupported and false, no court intervention is necessary.

**1.      Plaintiffs and Their Counsel Have Not Taken or Used Confidential Information to Obtain Consent Forms.**

In support of its motion, Defendant submits as self-serving affidavit from its VP of Human Resources claiming that its employees' addresses and phone numbers are "confidential." An employee's name, address, and phone number is not confidential, particularly when it is the

9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR  PROTECTIVE ORDER

employee himself who is disclosing this information.  Moreover, Defendant's own employee handbook, states that the classification of "confidential" applies to "sensitive business information, which is intended for use within the company and should be restricted only to those with a legitimate business need for access."[23]  Certainly the contact information of current and former employees of Defendant does not fit this definition when such information is readily available to the public via the telephone book, internet, and employees' personal records.

Although saturated with ethics allegations, Defendant's "memorandum of points and authorities in support" fails to cite a single affidavit or declaration from anyone who can substantiate or support its allegations other than Defendant's counsel stating that he is "informed and believes" that these things are true.  Such conduct on Defendant part should not go unnoticed, and Defendant should not be permitted to use the rules to achieve nothing but to tarnish Plaintiffs' and their counsel's reputation.

To reach its conclusions, Defendant erroneously assumes that the only documentary evidence available in this case is its confidential, proprietary documents.[24]  Contrary to this naked assumption, however, Plaintiffs' counsel is not soliciting confidential information, nor is it using any confidential documents to obtain putative class members' consent to join forms.[25]  So, while Defendant asks the Court to order Plaintiffs to produce and return to its confidential documents, Plaintiffs' counsel have none.[26]

The reason why Defendant's memorandum is void of any evidence is because Defendant does not know whether the consent forms in this case have been obtained through word-of-mouth, or putative class members initiating contact with Plaintiffs' counsel, or putative class members have simply downloading a consent form off of plaintiffs' counsel's website.   Instead of

---

[23] Def.'s Ex. A.
[24] Def.'s Mem. at 5.
[25] Lukas Aff. ¶ 4.
[26] Lukas Aff. ¶ 5.

considering these likely alternatives, Defendant resorts to unsupported ethics charges.  As such, Defendant's allegations are frivolous and its motion should be denied.

> **2.      Plaintiffs' Counsel's Website Does Not Invite People to Violate Any Confidentiality Agreements They May Have With Defendant.**

In pertinent part, Plaintiffs' counsel's website reads:

**We are looking for the following information:**

Names of current or former First NLC loan officers, loan processors or account managers (either based on memory or in document form these will help us notify potentially eligible employees of this lawsuit);

Any documents or records relating to your employment with First NLC.[27]

While Plaintiffs' counsel does seek documentary evidence of hours worked and any other information relevant to the issues in this lawsuit, this investigative effort is not aimed at soliciting purportedly confidential information or interfering with any alleged contractual or legal obligation to Defendant.[28]  Further, Plaintiffs fail to see how the language cited above amounts to soliciting First NLC employees to violate their employment agreements and First NLC policies, and more importantly as "tortious interference" with confidentiality agreements as Defendant alleges in their motion.  Many categories of documentary evidence may be in the hands of Plaintiffs, potential class members, or third parties that are not proprietary confidential First NLC documents.

Finally, while Defendant states that the "only" source of contact information on its current and former employees is its own secure computer files, Defendant ignores the fact that information can also be gleaned from other sources.[29]  For example, it is no secret that many co-workers socialize outside of work.  In this context, many employees retain contact information for

---

[27] Def.'s Ex. A.
[28] Lukas Aff. ¶ 5.
[29] <u>See</u> Def.'s Mem. at 12.

each other, even outside of Defendant's secure human resources computers.  It is no violation of confidence for a Plaintiff to reveal this information, so long as it is not improperly gathered from Defendant's secret files.  The mere fact that Plaintiffs work (or worked) for Defendant does not mean that all potential Plaintiffs' contact information is the sole property of Defendant.

Plaintiffs and Plaintiffs' counsel assert unconditionally that they are not using proprietary confidential First NLC documents.[30]  Plaintiffs' counsel is not obligated to divulge their work-product or their attorney-client privileged communications, which is what Defendant is demanding they do by pursing such a frivolous motion and compelling Plaintiffs' counsel to defend themselves against unsubstantiated ethics charges.  Defendant must come forward with more than mere assumptions if it is going to level these unfounded accusations.  Defendant's motion should be denied as wholly lacking factual foundation.

### C.   Plaintiffs' Counsel Have Not Subjected Themselves to Florida Rules of Professional Conduct.

#### 1.   The Advertisement Letter Complied with the Colorado Rules of Professional Conduct.

Defendant's final attempt at tainting the record is to argue that Plaintiffs' counsel have violated the Florida Rules of Professional Conduct by sending their advertisements letters to Florida residents.[31]  After filing their Complaint in the United States District Court, District of Colorado, Plaintiffs' counsel mailed conspicuously labeled advertisements letters to potential class members located around the country, including the State of Florida.   Plaintiffs' counsel is not generally admitted to the State Bar of Florida nor have they sought *pro hac vice* or special admission for this particular lawsuit.  As such, they are not required to adhere to the rules regulating the Florida Bar.  See Amendments to Rules Regulating the Florida Bar-Advertising Rules, 762 So.2d 392, 393 (Fla. 1999) (rejecting the proposed new rule regulating out-of-state

---

[30] Lukas Aff. ¶ 4 -5.
[31] Def.'s Mem. at 17-18.

lawyers' advertisements to Florida residents, and stating "[o]ut of state lawyers are not lawyers who are subject to the Rules Regulating the Florida Bar.")

Because the case was filed in the District of Colorado, Plaintiffs' counsel were required to comply with the Colorado Rules of Professional Conduct. Each advertisement letter complied with the Colorado Rules of Professional Conduct requiring, "[e]very written, recorded or electronic communication governed by this Rule 7.3 shall include the words "THIS IS AN ADVERTISEMENT" in a form that is clear and conspicuous on the outside of the envelope, if any, and at the beginning and send of any written, recorded or electronic communication." See Colo. Rules of Prof. Conduct 7.3. Since filing their Amended Complaint in this Court, adding a nationwide collective action claim, Plaintiffs' counsel's advertisement letters have complied with the California Rules of Professional Conduct.

### 2. Plaintiffs' Counsel Did Not Engage in the Unauthorized Practice of Law By Merely Sending Advertisement Letters to Florida Residents.

Defendant also claims that Plaintiffs' counsel have engaged in the unauthorized practice of law. The definition of the "practice of law," for purposes of Florida's statute prohibiting unauthorized practice of law is not confined to the language of the statute but rather is shaped by the decisional law and court rules as well as common understanding and practices. See Fla. Stat. Ann. § 454.23 (2006) (citing State v. Foster, 674 So.2d 747 (Fla. App. Ct. 1996)). In Foster, the court concluded that the non-lawyers active participation in questioning witnesses in depositions, without the presence of immediate guidance and supervision of a licensed practitioner or other person authorized to practice law in Florida, constituted the unauthorized of law. Id. at 753. Certainly, Plaintiffs' counsel's non-deceptive advertisement letters to Florida residents is not the type of activity that amounts to the unauthorized practice of law in Florida. cf. Florida Bar v. Kaiser, 397 So.2d 1132, 1133 (Fla. 1981) (New York attorney found to be engaging in the unauthorized practice of law for implying in telephone-book, television, and newspaper

13

advertising that he was authorized to practice law in Florida). Here, there is no implication in Plaintiffs' counsel's letter that Plaintiffs' counsel is licensed to practice law in the State of Florida.

## IV.     CONCLUSION

While Plaintiffs wait for the Court to authorize judicial notice to the prospective class members, Plaintiffs' counsel must utilize their own informal effort to obtain consent to join forms. Through Plaintiffs' constitutionally protected advertisement letters, word-of-mouth advertising, and prospective class members' own initiative, over 160 consent forms have been filed with this Court. Although Defendant would prefer potential class members not learn about this lawsuit, that this not the standard from which the Court should decide Defendant's motion for protective order.

Because Plaintiffs and their counsel have engaged in protected free speech, have not used any purportedly confidential information to obtain consent forms, and have complied with the rules of ethics, Defendant's motion should be summarily denied.

14

1    Dated: September 27, 2006          PETER RUKIN
                                        JOHN HYLAND
2                                       RUKIN HYLAND & DORIA LLP

3
                                        DONALD H. NICHOLS
4                                       PAUL J. LUKAS
                                        RACHHANA T. SREY
5                                       NICHOLS KASTER & ANDERSON

6

7                                       s/Paul J. Lukas
                                                PAUL J. LUKAS
8                                          ATTORNEYS FOR PLAINTIFFS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15