RUKIN HYLAND & DORIA LLP
Peter Rukin State Bar No. 178336
John Hyland State Bar No. 178875
100 Pine Street, Suite 725
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
Email: johnhyland@rhddlaw.com

NICHOLS KASTER & ANDERSON, PLLP
Donald H. Nichols, MN State Bar No. 78918
(admitted *pro hac vice*)
Paul J. Lukas, MN State Bar No. 22084X
(admitted *pro hac vice*)
Rachhana T. Srey, MN State Bar No. 340133
(admitted *pro hac vice*)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
lukas@nka.com

Attorneys for Individual and Representative Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

Jeremy Stanfield, Romonia Persand, and Shabnam Sheila Dehdashtian, Saira Losoya, and Eva Williams, individually, on behalf of all others similarly situated, and on behalf of the general public,

Plaintiffs,

vs.

First NLC Financial Services, LLC, and DOES 1 through 50 inclusive,

Defendants.

**Case File No.: C06-3892 SBA/JL**

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER FLSA, 29 U.S.C. § 216(b)**

Date: October 31, 2006
Time: 1:00 p.m.
Judge: Hon. Saundra B. Armstrong
Date Action Filed: June 22, 2006

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. ARGUMENT. ........ 1

A. Plaintiffs Have Met Their Burden of Proving that They are Similarly Situated to the Putative Class Members. ........ 2

B Fact-Specific Inquiries Are Not Appropriate at the Notice Stage. ........ 5

C. The Case Law Cited by Defendant Arguing for Individualized Inquiry is Inapplicable. ........ 7

D. Other Factors Not Considered Outside the First Stage Similarly Situated Analysis Should Not Be Considered. ........ 8

1. The merits of the claim are not considered ........ 9

2. Plaintiffs' constitutionally protected advertisement letters are not considered.. ........ 10

E. Plaintiffs' Suggested Form and Method of Notice is Widely Approved. ........ 13

III. CONCLUSION ........ 14

**TABLE OF AUTHORITIES**


Clausman v. Nortel Networks, Inc., 2003 U.S. Dist. LEXIS 11501 (S. D. Ind. May 1, 2003)……………………………………………………………………………………….8

Gerlach v. Wells Fargo & Co., 2006 WL 824652 (N. D. Cal. Mar. 28, 2006)…………...2, 3, 9, 13

Grayson v. K Mart Corp., 79 F.3d 1086 (11th Cir. 1996)………………………………………….5

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)................................................................................ 12

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001)…………………………...5

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y.1997)........................................................ 9

Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989) ...................................... 9, 10, 12, 13

In re Patricia Cavucci, No. 99-11704-J (11th Cir. July 28, 1999) .............................................. 12

Leuthold v. Destination Am., 224 F.R.D. 462 (N.D. Cal. 2004)…………………………..2, 4, 5, 6

Mallin v. Nat'l City Mortgage Inc., Civ. No. 05-01499 (N.D. Cal. July 15, 2005)……………..2, 4

Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005)............ 5

Morisky v. Public Serv. Elec. Gas & Co., 111 F. Supp. 2d 493 (D. N. J. 2000) ...................... ..7, 8

Pendlebury v. Starbucks Coffee Co., 2005 WL 84500 (S.D. Fla. Jan. 2, 2005)…………………..5

Pfohl v. Farmers Ins. Group, 2004 WL 554834 (C. D. Cal. 2004)........................................ 2, 5, 7

Pontius v. Delta Financial Corp., d/b/a Fidelity Mortgage, Inc., Civ No. 04-1737 (W.D. Pa., July 22, 2005)……………………………………………………………………………………13

Ray v. Motel 6 Operating, 1996 WL 938231 (D. Minn. Mar. 18, 1996)…................................ 7, 8

Romero v. Produces Dairy Foods, Inc., 235 F.R.D. 474, 482, 483 (E.D. Cal. 2006)................. 2, 9

Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992)………………………6

Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988) ................................................................. 9

Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095 (10th Cir. 2001)…………………………....5

Vaughn v. Oak Street Mortgage, 2006 U.S. Dist. LEXIS 15307 (M.D. Fla. Apr. 3, 2006)…10, 11

Vaughn v. Oak Street Mortgage, Civ. No. 05-00311 (M.D. Fla. Aug. 3, 2005) .......................... 11

Veliz v. Cintas Corp., 2004 WL 2623909 (N.D. Cal. Nov. 12, 2004)............................ 12, 13, 14

Young v. Cooper Cameron Corp., 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................. 9

## I. INTRODUCTION

In any job, no two employees are going to perform the same exact job duties. Fortunately for Plaintiffs and the putative class, being identical is not the standard by which the Court examines a motion for conditional class certification and notice under the Fair Labor Standard Act, 29 U.S.C. § 216(b). All that is required of Plaintiffs is that they show that they are "similarly situated" to the class they seek to represent. As this Court has previously recognized, this burden is very lenient and typically results in conditional certification.

Despite this well-established standard, Defendant seeks to interject the stricter second stage of the "similarly situated" analysis, even though no discovery has been conducted, primarily due to Defendant's refusal to respond to discovery requests. Through the allegations in Plaintiffs' Complaint and the facts contained in the thirty-three sworn declarations submitted in support of their motion, Plaintiffs have easily met their minimal burden of proving that they are "similarly situated" to the prospective class members. As such, the Court should reject the arguments raised in Defendant's opposition concerning the purported differences between putative class members' duties, the merits of Plaintiffs' claim, the propriety of Plaintiffs' counsel's constitutionally protected advertisement letters, and the alleged individualized discovery needed into each Plaintiff's and putative class member's claims.

Further, because Plaintiffs' proposed notice and method for providing notice achieves the ultimate goal of providing timely, accurate, and informative notice, Defendant's suggested modifications should also be rejected.

## II. ARGUMENT

Under the *ad hoc* two-tiered approach for the "similarly situated" analysis, the first step is to determine whether to issue notice, followed by a later determination (usually precipitated by a

motion to decertify) of whether the class members are truly similarly situated. See Leuthold v. Destination Am., 224 F.R.D. 462, 466 (N.D. Cal. 2004). Courts in this circuit routinely find that the allegations in the complaint and the affidavits submitted by the plaintiffs are sufficient to grant the plaintiffs' motion for conditional certification. See, e.g., Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 482, 483 (E.D. Cal. 2006) (finding the allegations in the complaint and only two supporting declarations sufficient to establish a basis for a collective action under the first stage determination); Mallin v. Nat'l City Mortgage Inc., Civ. No. 05-01499, at *6 (N. D. Cal. July 15, 2005) (concluding that the allegations in the plaintiff's complaint and the declarations of the named plaintiffs were sufficient to meet the lenient conditional certification standard);[1] Leuthold, 224 F.R.D. at 468 (finding that the allegations in the complaint along with affidavits alleging that the plaintiffs regularly worked overtime were sufficient).

At the notice stage, the court requires little more than substantial allegations, supported by declaration or discovery, that the "putative class members were together victims of a single decision, policy, or plan." Gerlach v. Wells Fargo & Co., 2006 WL 824652, at *2 (N. D. Cal. Mar. 28, 2006) (citation omitted). Application of this standard typically results in certification. Id.; see also Leuthold, 224 F.R.D. at 467 (citing Pfohl v. Farmers Ins. Group, 2004 WL 554834, at *2 (C. D. Cal. 2004)).

**A. Plaintiffs Have Met their Burden of Proving That They are Similarly Situated to the Putative Class Members.**

The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain a class. Leuthold, 224 F.R.D. at 467. At the first stage, all Plaintiffs must show is that some identifiable factual or legal nexus binds together the various claims of the class members, in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies of the FLSA. See Gerlach, 2006 WL

[1] A true and correct copy of Mallin is attached as Exhibit A to the Declaration of Rachhana T. Srey

824652, at * 2.

As in the other cases in this circuit, where conditional class certification was granted, here the allegations in Plaintiffs' complaint and the allegations in the thirty-three supporting declarations prove that a company-wide policy exists to deny Plaintiffs and the prospective class overtime compensation. Through this evidence, Plaintiffs have shown that they are bound together by a factual and legal nexus, warranting their claims to be heard together, because they "perform the same tasks, under the same conditions, and compensated in the same manner" as the class they seek to represent. See Gerlach, 2006 WL 824652, at *2. For example, Plaintiffs' Complaint alleges:

> During their employment with Defendant, within the applicable statute of limitations, Plaintiffs and the other Collective Class members worked in excess of forty hours per workweek without overtime compensation. Despite the hours worked by Plaintiffs and the Collective Class members, Defendant willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.[2]

Further, it alleges:

> By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, et seq.[3]

Likewise, Plaintiffs' declarations explain:

- As a loan officer, my primary duty is to sell loans and I spent the majority of my day selling loans.[4] I am informed and believe that the duties of other loan officers are similar to mine.[5]

---

[2] First Amended Compl. ¶ 35.

[3] Id. at ¶ 36.

[4] See Docket No. 49, Ex. A: Eaton Decl. ¶¶ 2-3; Forde Decl. ¶¶ 2-3; Frizzell Decl. ¶¶ 2-3; Fugett Decl. ¶¶ 2-3; Gray Decl. ¶¶ 2-3; Hall Decl. ¶¶ 2-3; Hampton Decl. ¶¶ 2-3; Haynes Decl. ¶¶ 2-3; Horak Decl. ¶¶ 2-3; Johnson Decl. ¶¶ 2-3; Lafferty Decl. ¶¶ 2-3; Lewis Decl. ¶¶ 2-3; Losoya Decl. ¶¶ 2-3; McNeil Decl. ¶¶ 2-3; Page Decl. ¶¶ 2-3; Pelayo Decl. ¶¶ 2-3; Shaeffer Decl. ¶¶ 2-3; Shirk Decl. ¶¶ 2-3; Stanfield Decl. ¶¶ 2-3; Thibodeaux Decl. ¶¶ 2-3; Whorley Decl. ¶¶ 2-3; T. Williams Decl. ¶¶ 2-3.

[5] See Docket No. 49, Ex. A: Eaton Decl. ¶ 2; Forde Decl. ¶ 2; Frizzell Decl. ¶ 2; Fugett Decl. ¶ 2; Gray Decl. ¶ 2; Hall Decl. ¶ 2; Hampton Decl. ¶ 2; Haynes Decl. ¶ 2; Horak Decl. ¶ 2; Johnson Decl. ¶ 2; Lafferty Decl. ¶ 2; Lewis

- As a loan processor or account manager, I am responsible for initiating the loan process such as ordering title, ordering appraisal, and pulling the customer's credit history. I am informed and believe that the duties of other loan processors or account managers are similar to mine.[6]

- While employed with Defendant, I worked more than forty hours per week.[7]

- First NLC did not compensate me for any hours I worked overt 40 per week.[8]

Like the plaintiffs in Leuthold, the Plaintiffs here have shown that they and putative class members are "together victims of a single decision, policy, or plan" to classify Defendant's loan officers, loan processors, and account managers as overtime exempt."[9] Such a showing meets Plaintiffs' minimal burden.

Remarkably, to defeat Plaintiffs' motion, Defendant relies only on conclusory declarations from one manager and two vice presidents, claiming "differences" exist between Plaintiffs and the putative class. While Defendant has access to hundreds if not thousands of putative class members, Defendant has not submitted a single affidavit from a current or former employee working in any of these three positions stating that their job duties were not similar to Plaintiffs.

---

Decl. ¶ 2; Losoya Decl. ¶ 2; McNeil Decl. ¶ 2; Page Decl. ¶ 2; Pelayo Decl. ¶ 2; Shaeffer Decl. ¶ 2; Shirk Decl. ¶ 2; Stanfield Decl. ¶ 2; Thibodeaux Decl. ¶ 2; Whorley Decl. ¶ 2; T. Williams Decl. ¶ 2.

[5] See Eaton Decl. ¶ 2; Forde Decl. ¶ 2; Frizzell Decl. ¶ 2; Fugett Decl. ¶ 2; Gray Decl. ¶ 2; Hall Decl. ¶ 2; Hampton Decl. ¶ 2; Haynes Decl. ¶ 2; Horak Decl. ¶ 2; Johnson Decl. ¶ 2; Lafferty Decl. ¶ 2; Lewis Decl. ¶ 2; Losoya Decl. ¶ 2; McNeil Decl. ¶ 2; Page Decl. ¶ 2; Pelayo Decl. ¶ 2; Shaeffer Decl. ¶ 2; Shirk Decl. ¶ 2; Stanfield Decl. ¶ 2; Thibodeaux Decl. ¶ 2; Whorley Decl. ¶ 2; T. Williams Decl. ¶ 2.

[6] See Docket No. 49, Ex. A: Dehdashtian Decl. ¶ 2; Duran Decl. ¶ 2; Jurow Decl. ¶ 2; Minnella Decl. ¶ 2; Nieto Decl. ¶ 2; Rosal Decl. ¶ 2; Terrien Decl. ¶ 2; Quiles Decl. ¶ 2; Peralta Decl. ¶ 2; Valdespino Decl. ¶ 2; E. Williams Decl. ¶ 2.

[7] See Docket No. 49, Ex. A: Dehdashtian Decl. ¶ 3; Duran Decl. ¶ 3; Eaton Decl. ¶ 3; Forde Decl. ¶ 3; Frizzell Decl. ¶ 3; Fugett Decl. ¶ 3; Gray Decl. ¶ 3; Hall Decl. ¶ 3; Hampton Decl. ¶ 3; Haynes Decl. ¶ 3; Horak Decl. ¶ 3; Johnson Decl. ¶ 3; Jurow Decl. ¶ 3; Lafferty Decl. ¶ 3; Lewis Decl. ¶ 3; Losoya Decl. ¶ 3; McNeil Decl. ¶ 3; Minnella Decl. ¶ 3; Nieto Decl. ¶ 3; Page Decl. ¶ 3; Pelayo Decl. ¶ 3; Peralta Decl. ¶ 3; Quiles Decl. ¶ 3; Rosal Decl. ¶ 3; Shaeffer Decl. ¶ 3; Shirk Decl. ¶ 3; Stanfield Decl. ¶ 3; Terrien Decl. ¶ 3; Thibodeaux Decl. ¶ 3; Whorley Decl. ¶ 3; Valdespino Decl. ¶ 3; E. Williams Decl. ¶ 3; T. Williams Decl. ¶ 3.

[8] See Docket No. 49, Ex. A: Dehdashtian Decl. ¶ 4; Duran Decl. ¶ 4; Eaton Decl. ¶ 4; Forde Decl. ¶ 4; Frizzell Decl. ¶ 4; Fugett Decl. ¶ 4; Gray Decl. ¶ 4; Hall Decl. ¶ 4; Hampton Decl. ¶ 4; Haynes Decl. ¶ 4; Horak Decl. ¶ 4; Johnson Decl. ¶ 4; Jurow Decl. ¶ 4; Lafferty Decl. ¶ 4; Lewis Decl. ¶ 4; Losoya Decl. ¶ 4; McNeil Decl. ¶ 4; Minnella Decl. ¶ 4; Nieto Decl. ¶ 4; Page Decl. ¶ 4; Pelayo Decl. ¶ 4; Peralta Decl. ¶ 4; Quiles Decl. ¶ 4; Rosal Decl. ¶ 4; Shaeffer Decl. ¶ 4; Shirk Decl. ¶ 4; Stanfield Decl. ¶ 4; Terrien Decl. ¶ 4; Thibodeaux Decl. ¶ 4; Whorley Decl. ¶ 4; Valdespino Decl. ¶ 4; E. Williams Decl. ¶ 4; T. Williams Decl. ¶ 4.

[9] See Plaintiffs' Declarations and Defendant's Answer at 8.

In Mallin, the court acknowledged that evidence submitted by the plaintiffs to support their claim was contrary to the defendant's declarations. Id. at *6. Despite this contrast, the court in Mallin nonetheless found that the plaintiffs' allegations were sufficient to meet the lenient standard:

> Taking notice of the light burden imposed on plaintiffs moving for conditional class certification, this Court finds that Plaintiffs in the instant case have properly alleged a company wide policy of improperly classifying loan originators as exempt employees, and therefore failing to pay overtime wages in violation of the FLSA.

Id.

Finally, although attempting to highlight the purported differences between account managers and loan processors, Defendant's opposition actually concedes the similar, if not identical nature of these two positions' job duties. The opposition confirms that both loan processors and account manager may handle either a wholesale or retail account, and that the only difference between employees holding either job title is the fact that one works on the west coast while the other works on the east.[10]

Because Plaintiffs have come forward with the necessary evidence to meet their burden, their motion should be granted.

**B. Fact-Specific Inquiries Are Not Appropriate at the Notice Stage.**

In response to this motion, Defendant urges the court to make individualized factual inquiry. Yet, despite being properly served with discovery requests, Defendant has refused to respond to discovery until after the Court decides this motion.[11] In the meantime, Defendant's attempt to create fact disputes—as if Defendant was responding to a motion for summary judgment—is not appropriate at the first stage, but rather, at the more stringent second stage once discovery is complete. Once discovery is complete and the case is ready to be tried, and if the

[10] See Def. Mem. at 4. "Persons employed at First NLC's regional operations centers located west of the Mississippi, are referred to by the Company as Account Managers, while those employed in regional operations centers located east of the Mississippi are called Loan Processors." Moreover, Defendant's opposition repeatedly refers to "Account Managers/Loan Processors."

[11] See Case Management Report, Docket No. 78.

defendant moves to decertify the class, the Court examines the complete factual record and "make[s] a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." See Leuthold, 224 F.R.D. at 467 (citing Pfohl, 2004 WL 554834, at **2-3); Gerlach, 2006 WL 824652, at *4 (granting stage one conditional class certification even though "volumes of paper have been produced and over a dozen witnesses deposed" because the discovery was no where near complete); see also Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1219 (11th Cir. 2001) (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1098-99 (11th Cir. 1996) (rejecting defendant's argument that class could not be conditionally certified because each plaintiff's case was unique and required individual analysis); Masson v. Ecolab, Inc., 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (the eventual need for "extensive" individual discovery does not prevent conditional certification at this first stage); Pendlebury v. Starbucks Coffee Co., 2005 WL 84500, *3 (S. D. Fla. Jan. 3, 2005) (finding a fact-specific inquiry is inappropriate at the conditional certification stage) (internal citations omitted).

Here, discovery is in its infancy. [12] By arguing for fact-specific inquiries at this early stage, Defendant's opposition asks the Court to skip the first stage and apply in the incorrect legal standard to Plaintiffs' motion. See Leuthold, 224 F.R.D. at 467 ("[t]he two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class. This is evident from the methods usually employed to decide the issues raised by the two tiers."). Defendant's opposition simply draws the Court's attention to the

[12] Plaintiffs served their discovery requests on Defendant on September 6, 2006. Defendant has taken the position that it is not required to respond to Plaintiffs' discovery requests until after the Court rules on Defendant's motion for protective order and the instant motion. [Docket No. 78].

fact that at this early stage of the litigation, the parties' positions diverge—a fact not disputed and certainly not sufficient to defeat conditional class certification. See Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 279 (D. Minn. 1992) (concluding that the determination of whether a colorable basis exists for plaintiffs' [similarly situated] claim does not require this court to make any findings of fact with respect to contradictory evidence presented by the parties nor does this court need to make any credibility determination with respect to the evidence presented).

Defendant's opposition claims the following "differences" from one loan officer to another such as they may have different personalities, skills sets, training, seniority, and managers.[13] These purported differences do not rise to "material" differences in the duties and responsibilities of the proposed class. If Defendant's differences were sufficient, no class could be conditionally certified in any job category anywhere in the United States, and this would flout the FLSA's broad remedial purpose. Notably, Defendant does not claim that a loan officer's primary job duty is anything but selling loans or that a account manager/loan processor's primary job duty is anything other than to process these loans, as Plaintiffs have alleged.[14]

If any purported differences between the factual circumstances of Plaintiffs and each individual class member exist, these will be revealed once discovery begins in this case. In the meantime, to determine whether to conditionally certify the class, drawing disingenuous distinctions between Plaintiffs and the putative class does not prevent notice of this lawsuit where Plaintiffs have come forward with the necessary evidence to show that similarities exist.

**C. The Case Law Cited by Defendant Arguing for Individualized Inquiry is Inapplicable.**

While it is true that courts sometimes bypass the first notice stage under the two-tier ad

[13] See generally Def. Mem.
[14] See Plaintiffs' Declarations, Docket No. 49, Exhibit A.

hoc approach, this occurs when extensive discovery has been completed. See, e.g., Pfohl, 2004 WL 554834 at *2-3; Ray v. Motel 6 Operating, 1996 WL 938231, at *3-4 (D. Minn. Mar. 18, 1996). As such, the cases cited by Defendant arguing for individualized factual inquiry are readily distinguishable. In Ray, the Court recognized that at the notice stage, the lenient standard of review applied. Id. at *4. The Ray Court also noted that because the facts before the court were so extensive, there was no need for additional discovery to make a determination of whether the plaintiffs and putative class members were similarly situated to proceed to trial as a collective class. Id. The court therefore made its similarly situated determination under the second-stage analysis. Id.

Likewise, Plaintiffs' case cannot be compared to Morisky v. Public Serv. Elec. Gas & Co., 111 F. Supp. 2d 493, 498 (D. N. J. 2000), a case in which discovery was completed well before the plaintiffs' motion for notice was filed. As a result of this, the court applied the stricter second-stage standard and found that the plaintiffs had not met their burden to proceed collectively through trial. Id. Finally, Clausman v. Nortel Networks, Inc., 2003 U.S. Dist. LEXIS 11501, at * 1 (S. D. Ind. May 1, 2003) is unpersuasive and readily distinguishable. In Clausman, the court initially granted the plaintiff's motion for conditional class certification, then permitted the defendant to conduct more discovery after the court's order, and later considered the defendant's surreply relating the merits of the defendant's outside sales exemption defense. Id. at **4-5. In considering the merits of the plaintiff's case, the court improperly deviated from the accepted first stage standard.

Unlike Ray and Morisky, the lenient standard is applicable in this case because discovery has not been conducted. In fact, Defendant has specifically refused even to respond to Plaintiffs' first discovery requests. At this time, the discovery deadline is not even established because the parties have not participated in a case management conference with the Court.

**D. Other Factors Outside the First-Stage "Similarly Situated" Analysis Should Not Be Considered.**

Courts must apply a very narrow standard when considering motions for conditional certification and judicial notice. In fact, many of the standards courts commonly apply to other kinds of motions are not appropriate. As a result, Defendant's self-serving declarations full of "magic words" to support its exemption defenses are not sufficient to deny notice, particularly because factors such as the merits of Plaintiffs' case, and Plaintiffs' pre-certification advertisement letters are not considered.

**1. The merits of the claim are not considered.**

Defendant attempts to defeat Plaintiffs' motion by arguing the merits of their case. For example, Defendant claims that "some of the overtime exemptions in this case require employees to regularly exercise "discretion and judgment."[15]

At the "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." In fact, in granting motions for conditional certification, courts are careful to remain objective regarding merits of the case. See Gerlach, 2006 WL 824652, at *4 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989); Romero, 235 F.R.D. at 492 (acknowledging that the proposed notice is drafted to ensure that the court has not expressed an opinion regarding the merits of case); see also Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations that the law has been violated); Hoffmann v. Sbarro, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"). Further, factual inquiry into whether an employee exercised the

[15] Def. Mem. at 21.

requisite "discretion and judgment" is improper, particularly where Defendant has admitted to having a company-wide policy to classify its loan officers, loan processors, and account managers as overtime exempt. As such, Defendant's arguments addressing the merits of its exemption defenses are misplaced.

**2. Plaintiffs' constitutionally protected advertisement letters are not considered.**

Much of Defendant's opposition memorandum is devoted to distracting the Court's attention away from making its "similarly situated" determination by arguing its Motion for Protective Order. With no evidence for its accusation, Defendant claims that, "Plaintiffs appropriate and used First NLC's confidential employee contact information to send a misleading and incomplete communication to the putative class in order to stir up litigation."[16] To support this bold assertion, Defendant cites only to its attorney's declaration containing "beliefs" rather than facts about NKA's advertisement letters generally, and not about whether Plaintiffs "appropriated and used First NLC's confidential information."

Arguments relating to Defendant's motion for protective order are certainly not properly before this court on Plaintiffs' motion for notice. In fact, the Court has referred Defendant's motion to Magistrate Larson and has already rejected Defendant's attempt to have the District Court Judge decide its motion simultaneously with Plaintiffs' motion.[17]

Moreover, informal efforts by Plaintiffs and their counsel to advertise to the potential opt-ins are constitutionally-protected. As fully discussed in Plaintiffs' opposition to Defendant's motion for protective order, pre-certification communications such as Plaintiffs' counsel's advertisement letters are First Amendment-protected speech. Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988). Indeed, disputes over the content of such pre-notice communications are

[16] Def. Mem. at 10.
[17] See Docket No. 70.

another reason the Supreme Court identified, in Hoffmann-La Roche, for justifying court-approved notice in FLSA collective actions. 493 U.S. at 172 (finding that the parties' dispute over 600 letters sent by the plaintiffs prior to seeking judicial notice "illustrate the propriety, if not the necessity, for court intervention in the notice process").

Comparing the present case to another case in which NKA is lead counsel, Vaughn v. Oak Street Mortgage, Defendant urges the Court to strike previously filed consents as the appropriate remedy to Plaintiffs' purported misconduct. Defendant asserts, "[t]here is no material difference between the Nichols Kaster firm's misconduct in Vaughn and this case."[18] Nothing could be farther from the truth.

The April 3, 2006 Vaughn decision cited by Defendant is the court's decision on the plaintiffs' motion for equitable tolling. Referring back to an earlier order, of August 3, 2005, regarding NKA's solicitation letters and website, the court stated, "[t]he Court did not bar future solicitation letters; it merely required that any future letters be in compliance with the Rules of Professional Conduct of the Rules Regulating the Florida Bar." Vaughn v. Oak Street Mortgage, 2006 U.S. Dist. LEXIS 15307 (M. D. Fla. Apr. 3, 2006). In fact, the earlier order specifically noted "there is nothing misleading about the website (www.overtimecases.com) in general." See Vaughn v. Oak Street Mortgage, Civ. No. 05-00311, at *7 (M.D. Fla. Aug. 3, 2005) (hereinafter "Vaughn Order") The sanctions in the Vaughn Order were based in large part on erroneous information included on NKA's website at that time, under the specific hyperlink for that specific case, stating that NKA had "filed a motion for nationwide class certification…and [were] awaiting the Court's ruling," which at the time was inaccurate. [19] There is no similar circumstance in the instant case.

Moreover, the Vaughn Order did not strike the consents or order NKA to cease and desist

[18] Def. Mem. at 11.
[19] Vaughn Order, Docket No. 42, at **7-8.

from sending advertisement letters generally as Defendant requests here. The Vaughn Order specifically recognized the First Amendment considerations a court must undertake before limiting a plaintiff's constitutionally protected free speech.[20] Vaughn required Plaintiffs to change its advertisement letters to comply with Florida regulations for advertising because NKA had subjected themselves to the Florida Bar's rules.[21] Here, NKA is not subject to Florida's advertising rules and the advertisement letters are not misleading. The letters in this matter truthfully inform putative class members of a pending lawsuit against Defendant for overtime compensation brought on behalf of loan officers and loan processors. The letters truthfully enclosed a consent to join form and advise the prospective class members that they must complete the form in order to join the collective action. Contrary to Defendant's contentions, the letter does not imply that the Court has entered judgment against Defendant, or that the case has been certified as a class, or that putative class members will recover compensation by simply completing the consent form. No reasonable reading of Plaintiffs' advertisement letter could suggest such implications. Ironically, Defendant attempts to mislead the Court in its accusations that Plaintiffs are misleading putative class members.

Admittedly, the advertisement letters do not contain nearly the detail of court-authorized notice. Certainly, Plaintiffs did not seek permission from the Court or Defendant to send them. However, as constitutionally protected commercial speech, Plaintiffs are not required to obtain permission before sending such advertisements. Nor are Plaintiffs required to include everything that would be included in the court's notice that Plaintiffs now seek. See In re Patricia Cavucci, No. 99-11704-J (11th Cir. July 28, 1999) (concluding that the plaintiffs were not required to seek court approval before contacting potential members because, "if the plaintiffs wish to contact potential collective action members without the district court's intervention, they are free to do

---

[20] See id. at **6-7.
[21] Id. at *8, fn 18.

so.").[22] As this Court has recognized, "a district court should only consider the narrowest possible relief that limits speech as little as possible consistent with the rights of the parties under the circumstances." Veliz v. Cintas Corp., 2004 WL 2623909, at *3 (N. D. Cal. Nov. 12, 2004) (citing Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981) (internal quotation marks omitted). Under this standard, an order striking consents, limiting the weight given to Plaintiffs' declarations, or requiring curative notice is entirely improper.

**E. Plaintiffs' Suggested Form and Method of Notice is Widely Approved.**

Plaintiffs' Proposed Notice is "timely, accurate, and informative." See Hoffmann-La Roche, 493 U.S. at 172. Plaintiffs have drafted their notice to mirror other notices used in FLSA collective actions, including notices approved by this Court.[23] Defendant's suggested limitations to the form and method of notice are impractical and not widely recognized. First, Defendant claims that a third party distributor is needed to protect Plaintiffs' privacy rights and to protect Defendant against Plaintiffs' alleged misuse of employee information. Defendant is not in a position to argue on behalf of the privacy rights of individual class members, but Plaintiffs are.

Defendant fails to recognize that the putative class members are critical fact witnesses to this lawsuit. See Hoffmann-La Roche, 493 U.S. at 171. As critical fact witnesses, their contact information is certainly relevant and discoverable. In fact, Plaintiffs' discovery request specifically seeks this information. Like Veliz, the Court should order Defendant to provide Plaintiffs the names and addresses of all putative class members to be noticed. See Veliz, 2004 WL 2626909, at *2. Other courts have explicitly rejected a suggestion to use a third-party administrator. See, e.g., Pontius v. Delta Financial Corp., d/b/a Fidelity Mortgage, Inc., Civ. No. 04-1737 (W.D. Pa., July 22, 2005) (recognizing that notice of conditional certification is most

---

[22] A true and correct copy of In re Cavucci is attached as Ex. B.

[23] Attached as Ex. C to the Declaration of Rachhana T. Srey are true and correct copies of court-approved notices in other FLSA collective actions.

commonly provided by the plaintiffs' counsel and implementing said practice).[24] Id. Employing a third-party distributor will only add to the financial burden placed on Plaintiffs, which the FLSA seeks to minimize by the collective class mechanism.

Defendant seeks to limit the opt-in period to 45 days rather than the 90-day period that Plaintiffs suggest. As Defendant knows, 45 days is simply not enough time for Plaintiffs' counsel to collect and file consent forms. In Veliz, 2004 WL 263909, at *4 (N.D. Cal. Nov. 12, 2004), this Court allowed an opt-in period of approximately 60 days. More recently, in Gerlach, another Northern District of California Court permitted an opt-in period of 75 days. 2006 WL 824652, at *4. Defendant also requests Plaintiffs to bear the cost of providing notice. In Veliz, the Court ordered the defendant to bear the mailing costs of notice. 2004 WL 263909, at *2.

Plaintiffs' proposed notice is limited to those who are eligible to join this case. By ordering Defendant to produce the list, the pool of eligible employees is specifically limited to those who worked as a loan officer, loan processor, or account manager from the date of the Court's order granting notice back three years. The Court should reject Defendant's modifications to the notice.

## III. CONCLUSION

Through the allegations in their complaint, and the supportive declarations, Plaintiffs have easily met their burden of showing that they are similarly situated to the putative class members. The amount of time Defendant spends rearguing their protective order motion is a transparent attempt to poison the well and distract the Court's attention from the lenient first stage similarly situated determination. Defendant's other arguments concerning the purported "differences" between Plaintiffs and the putative class do nothing more than highlight the similarities between loan processors and account managers, and confirm that fact disputes exist between the parties.

[24] A true and correct copy of Pontius is attached as Ex. D.

Such fact disputes are insufficient to defeat Plaintiffs' conditional certification motion at this early stage, and the Court should grant Plaintiffs' motion in its entirety.

Dated: October 17, 2006

PETER RUKIN
JOHN HYLAND
RUKIN HYLAND & DORIA LLP

DONALD H. NICHOLS
PAUL J. LUKAS
RACHHANA T. SREY
NICHOLS KASTER & ANDERSON

s/Rachhana T. Srey
RACHHANA T. SREY
ATTORNEYS FOR PLAINTIFFS