IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY STANFIELD, et al., | No. C 06-3892 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket No. 48] |
| FIRST NLC FINANCIAL SERVICES, LLC, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Conditional Class Certification [Docket No. 48].

**BACKGROUND**

Plaintiffs Jeremy Stanfield, Romonia Persand, Shabnam Sheila Dehdashtian, Saira Losoya, and Eva Williams brought an action on their own behalf, and on behalf of those similarly situated, claiming that Defendant failed to pay them overtime compensation as required by the Fair Labor Standards Act (FLSA) and the California Labor Code. First Amended Complaint (FAC) at ¶ 1. Stanfield and Losoya worked as loan officers in Defendant's Concord, California and Westminister, Colorado branch offices, respectively. Persand and Williams worked as loan processors in Defendant's Anaheim, California and Denver, Colorado branch offices, respectively. Dehdashtian worked as an account manager in Defendant's Orange, California branch office. The proposed class is composed of all persons who are or have been employed by Defendant as loan officers, loan processors, or account managers in the United States[1] at any time in the three years prior to the filing of the lawsuit. *Id*. at ¶ 2.

---

[1] This suit was initially filed on behalf of employees in California. Pursuant to the parties' stipulation, the Court consolidated this case with *Losoya, et al v. First NLC Financial Services, LLC*, Civil File No. 06-CV-00866-REB-MEH, which was a nationwide collective action filed in the U.S. District Court for the District of Colorado (Docket No. 29).

First NLC is a nationwide non-prime residential mortgage lender. It is headquartered in Florida, and has regional and field offices across the country originating loans in 41 states. Raney Decl. at ¶¶ 3, 4. First NLC has two business divisions, retail and wholesale. *Id*. at ¶ 3. The retail division offers First NLC's lending products directly to borrowers. The wholesale division consults with mortgage brokers. *Id*. According to Defendant, "[t]he duties of employees in the account manager/loan processor positions vary from each other based on a variety of factors, such as whether they work on the wholesale or retail side of First NLC, geography, branch manager style and more." *Id*. at ¶ 7.

Plaintiff contends that all loan officers perform the same job duties. According to Plaintiff, loan officers make phone calls to potential customers, obtain information from customers to complete loan applications, collect client documents, and send the loan package to the loan processor. Loan processors "are responsible for initiating the loan process such as ordering title, ordering appraisal, and pulling the customer's credit history." Loan processors also compile documents and send the loan file to the underwriting department, and, if the loan is approved, place a copy of the loan approval in the loan application file. Account managers perform the same job duties as loan processors. According to Plaintiffs, Defendant treats all members of the putative collective action the same by classifying them as "exempt" from the overtime requirements of the FLSA.

In support of the allegations recited above, Plaintiffs rely on declarations, some of which are from named Plaintiffs. All of the declarations are essentially the same. The employees worked in different offices at different times, but each identifies similar job tasks and states that he or she worked more than 40 hours per week and was not paid overtime. *See, e.g.*, E. Williams Decl.; Dehdashtian Decl.; Stanfield Decl.; Losoya Decl.

To date, approximately 164 current and former employees of First NLC have opted in to the proposed collective action.[2]

---

[2] Defendant filed a Motion for Protective Order, arguing that Plaintiffs' counsel "misappropriated and misused First NLC's employee contact information to send a misleading and incomplete communication to the putative class members." Opposition at 1. Defendant asks the Court to prohibit

2

## **LEGAL STANDARD**

The FLSA allows an employee to bring a collective action[3] on behalf of "similarly situated" employees for the employer's failure to pay overtime wages. 29 U.S.C. § 216(b). Potential plaintiffs must "opt in" to the suit by filing a written consent with the court. *Id.*

Determining whether a collective action is appropriate is within the discretion of the district court. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.). The plaintiff bears the burden of showing that putative collective action members are similarly situated. *Id.* Courts in this district have used a "two-tiered" approach: the court makes an initial determination of whether the plaintiffs are similarly situated based on the pleadings and any affidavits submitted by the parties. The standard is lenient, and conditional collective action certification is usually granted. *Id.* at 467; *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 at *2 (N.D. Cal. March 28, 2006) (Wilken, J.). The second step occurs when discovery is complete. The party opposing collective action certification may move to decertify, and the Court then determines the propriety and scope of the collective action using a stricter standard. *Id.* At the second step, the Court may consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Leuthold*, 224 F.R.D. at 467.

If the Court decides to certify a collective action, the Court may authorize and facilitate notice to potential plaintiffs, under *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-73 (1989). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin

---

Plaintiffs' counsel from communicating with the putative class and to void the consent forms procured by the allegedly inappropriate communications, among other things. The Motion for Protective Order was referred to Magistrate Judge James Larson, who held a hearing on October 18, 2006 and issued an order denying the Motion on October 30, 2006. Much of Defendant's brief in Opposition to Plaintiffs' Motion for Conditional Collective Action Certification is devoted to arguments about the need for a protective order and the impropriety of Plaintiffs' counsel's actions. The Court disregards these arguments.

[3]Although Plaintiffs have titled the Motion a "Motion for Conditional Class Certification," it is clearly a Motion for Conditional Collective Action Certification under the FLSA. Federal Rule of Civil Procedure 23, which governs class certification in most instances, is inapplicable here. *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.)

its involvement early, at the point of the initial notice, rather than at some later time." *Id*. at 171.

## ANALYSIS

**A.     Collective Action**

At this juncture, the Court will only make an initial determination of whether collective action members are similarly situated, as discovery has not yet been conducted.[4] To grant conditional certification at this stage, "the court requires little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach*, 2006 WL 824652 at *2 (quoting *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  The named Plaintiffs' duties must be generally comparable to those they seek to represent, and "it is incumbent on Plaintiff to propose a class that is sufficiently defined and manageable from the outset." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

Defendant contends that the Court should not certify the collective action if a fact-intensive inquiry into each potential plaintiff's employment situation is required. *See Clausman v. Nortel Networks, Inc.*, 2003 WL 21314065 (S.D. Ind. May 1, 2003) (denying collective action certification because the court would have had to determine whether every potential plaintiff was correctly classified as an "outside salesman," and thus excluded from the FLSA). *See also Freeman*, 256 F. Supp. 2d at 945 (declining to certify collective action at first step because there were material differences in duties and responsibilities of putative members).[5]

According to Defendant, there are material differences in the duties of putative collective action members.  Defendant agrees that loan officers consult with customers over the telephone. However, Defendant asserts, "[i]n any given branch, there are approximately 20 different loan officers with 20 different personalities and skill sets." Ranck Decl. at ¶ 5.  Further, differences in duties arise from branch managers' different expectations: "[f]or example, some branch managers

---

[4] According to Plaintiffs, Defendant has refused to engage in discovery until the Court resolves the instant Motion.

[5] However, in at least one of the cases relied upon by Defendant, *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000), the court undertook the more rigorous second-stage analysis of substantial similarity, because discovery was complete.  That is not the case here.

4

employ their more senior loan officers as 'team leaders.' In addition to their normal job responsibilities, team leaders are tasked with taking on the extra responsibility of training and supervising the branch's more junior loan officers." *Id*. at ¶ 7. In addition, Defendant asserts that loan officers' duties vary depending on whether they work for a wholesale or retail branch. "For example, in the retail side, if there were problems with a loan application file – such as questions about the adequacy of a customer's income documentation – the retail account manager/loan processor had the authority to sign off on and approve that the questionable documents were adequate. On the wholesale side, account managers/loan processors must check with the regional managers before signing off on the adequacy of documents." Raney Decl. at ¶ 9. Defendant also asserts that Plaintiffs' distinction between "loan processors" and "account managers" is incorrect – Plaintiffs claim that the only difference is that the former work on the retail side while the latter work on the wholesale side, but according to Defendant, both titles may handle either type of account. The difference is that the title "loan processor" is used east of the Mississippi, and the title "account manager" is used west of the Mississippi. Loney Decl. at ¶ 4. Defendant contends that employees in the relevant positions are "given tremendous discretion and autonomy to perform their work," and thus the time they spend on various tasks is not consistent. Raney Decl. at ¶ 12.

These alleged differences are not material, and a fact-intensive inquiry is not required at this juncture. Defendant does not appear to dispute that it classifies all loan officers, account managers, and loan processors as exempt and does not pay them overtime. Nor do Defendant's declarations demonstrate any significant differences in their job duties. Defendant did not submit any affidavits from current or former employees in the relevant positions, stating that their tasks were significantly different from those identified by Plaintiffs. Conclusory statements by managers that every employee has different tasks and skills are not sufficient.

Defendant argues that Plaintiffs' declarations are unreliable and should be stricken because they are all substantially the same. However, the only authority Defendant offers to support its argument are two Texas habeas cases, which are not persuasive in this context. A court in this district has held that "plaintiffs' use of identical language is not grounds for striking their declarations." *Doe v. Texaco, Inc*., 2006 WL 2850035 at *2 (Oct. 5, 2006) (Alsup, J.). Defendant

5

asserts that Plaintiffs' claim that putative class members in each job title perform the same duties "logically [] makes no sense." The Court disagrees. It is entirely logical that employees in the same job title perform very similar tasks. Plaintiffs' declarations are sufficient to meet their burden of proving similarity.

Finally, Defendant contends that "the presence of several exemptions that may apply to the putative class members also precludes class certification." Opposition at 20. This presumably means that certain employees are exempt from the FLSA, and Defendant believes that putative class members may fall into one or more of those exempt categories. However, aside from naming them and citing the relevant regulations, Defendant provides no explanation or argument about these potential exemptions sufficient to demonstrate to the Court that it is a viable concern which detracts from the finding that Plaintiffs are similarly situated. The Court rejects Defendant's argument. Moreover, the Court will not evaluate the merits of Plaintiffs' claims under the FLSA at this point in the litigation. *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (stating that the focus of the court's inquiry at the initial certification stage is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated"). Even if it turns out that Plaintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a collective action should still be certified if they are similarly situated.

Accordingly, Plaintiffs' Motion for Conditional Class Certification is GRANTED.

**B.      Notice**

Courts are cautious about approving notice to the putative class lest they "stir up" litigation. *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991); *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, Docket No. 121 (citing *Severtson*, but approving collective action and granting motion for facilitated notice). However, Defendant appears to agree that the Court should facilitate notice if the collective action is certified. *See* Opposition at 12-13. Court-approved notice must be "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172.

Plaintiffs have submitted a proposed notice of collective action as part of their Motion. *See* Srey Decl. Ex. F. The notice gives a brief description of the action: "the action alleges that [First

6

NLC loan officers, loan processors, and account managers] are owed overtime pay under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, for hours worked in excess of forty (40) per week. . . . First NLC denies Plaintiffs' allegations and maintains that Plaintiffs are exempt from the overtime provisions of the FLSA." *Id*. The notice informs potential plaintiffs of their right to participate in the lawsuit, and describes the effect of joining or not joining the suit. It also explains the statute of limitations, that First NLC is prohibited from retaliating against employees for participating in the suit, and that returning the consent form is an agreement to be represented by Plaintiffs' counsel. In conclusion, the notice states that it is authorized by the Court, but that the Court "has made no decision in this case about the merits of Plaintiffs' claims or of Defendant's defenses." *Id*.

Defendant lodges several objections to the proposed notice. First, Defendant argues that curative notice should be sent to the class addressing the allegedly misleading statements which are the subject of the Motion for Protective Order. Judge Larson denied the Motion, so curative notice is not warranted. Second, Defendant argues that only individuals who worked for First NLC in the past three years should receive notice, as the maximum statute of limitations is three years. The Court agrees. Plaintiffs' proposed notice leaves the date blank; the date should be filled in to reflect the three-year limitation period.

Next, Defendant argues that the notice should explain the costs that Plaintiffs may incur, relying on *Krueger v. N.Y. Tel. Co.*, 1993 WL 276058 at *3 (S.D.N.Y. July 21, 1992). The court in *Krueger* did order that the notice state any fees or advances that a plaintiff would be obligated to pay at any stage of the litigation. However, Plaintiffs offer many examples of notices approved by various courts (all drafted by lead counsel, Nichols Kaster & Anderson), which do not explain costs that potential plaintiffs may incur. The court in *Gerlach* noted that language explaining fees and costs plaintiffs may have to pay could be confusing or misleading. 2006 WL 824652 at *4. The Court concurs with Defendant; potential Plaintiffs should be made aware of any fees or costs for which they may be liable before opting in to the lawsuit. The parties are ordered to meet and confer to draft a mutually acceptable provision explaining potential costs that Plaintiffs may incur.

Defendant next argues that Plaintiffs should bear the costs of notice, citing two Supreme

Court cases holding that plaintiffs ordinarily bear the cost of giving notice to the class in a class action. See Opposition at 23. Though these were Rule 23 class actions, they are persuasive here. Plaintiff points out that in *Veliz v. Cintas*, this Court ordered the defendant to bear the cost of notice. However, that appears to have been a sanction for the defendant's failure to provide the plaintiffs with the names and addresses of potential class members. The Court agrees with Defendant that Plaintiffs should bear the costs of notice.

Defendant next argues that a neutral third party should mail the notice, because potential class members have a privacy interest in the nondisclosure of their names and home addresses. Plaintiffs argue that the contact information of potential plaintiffs is relevant and discoverable. Each side cites out-of-circuit district court cases in which the court prohibited or allowed the disclosure of names and addresses, respectively. The only decision cited from this district is *Veliz v. Cintas*, in which this Court ordered the defendants to produce a list of names and addresses of potential class members. Ordering a third-party administrator will add to Plaintiffs' financial burden. Accordingly, the Court rejects Defendant's request. Defendant is ordered to produce the names and addresses of potential class members.

Defendant also argues that the notice period should be limited to 45 days. Plaintiffs state that this is not enough time for counsel to collect and file consent forms. Plaintiffs assert that in *Veliz*, this Court allowed 60 days. In *Gerlach*, the court set a 75-day deadline. See 2006 WL 824652 at *4 (citing *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 632 (D. Colo. 2002), in which the court approved a 60-day opt-in period). Plaintiffs suggest 90 days. The Court approves a 60-day notice period.

Finally, Defendant contends that there are other (unidentified) changes in the notice that should be made to ensure that it does not favor either side. Defendant asks the Court to order the parties to meet and confer on appropriate language. As the parties have already been ordered to meet and confer regarding language about potential costs to Plaintiffs, Defendant's request is granted. However, delay will prevent progress on discovery matters. The parties are hereby ordered to meet within 10 days of the issuance of this order, and to promptly draft a mutually acceptable notice or inform the Court that they have been unable to do so.

## **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Conditional Collective Action Certification is GRANTED.

IT IS SO ORDERED.

Dated: 11/1/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge